[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 30, 2011
JOHN LEY
CLERK

_____

No. 11-10465

_____

D. C. Docket No. 1:10-cv-00795-WKW,
BKCY No. 1:10-bk-10491-DHW

In Re:

DANIEL W. GARNER, SR.,

Debtor.

_____

FIRST UNITED SECURITY BANK,

Plaintiff-Appellant,

versus

DANIEL W. GARNER, SR.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(November 30, 2011)

Before DUBINA, Chief Judge, COX, Circuit Judge, and HUNT,[*] District Judge.

DUBINA, Chief Judge:

Appellant First United Security Bank ("FUSB") appeals the district court's affirmation of the bankruptcy court's order that partially overruled FUSB's objection to confirmation of the Chapter 13 bankruptcy plan. FUSB contends that under Section 506(b) of the Bankruptcy Code, debtor Daniel W. Garner must pay interest on its claim at the contract rate of 10.5% because FUSB is an oversecured creditor. The bankruptcy and district courts found that FUSB can only recover post-petition interest at the contract rate from the date of filing until confirmation of the bankruptcy plan. We affirm the judgment of the district court affirming the bankruptcy court's order.

## I.

Garner borrowed $33,848.14 from FUSB in December 2008 and signed a promissory note with an interest rate of 10.5% per year to be repaid over a period of 30 months. A security agreement gave FUSB a security interest in a 2000 International tractor truck, a 1998 Western Star tractor, a 1978 Great Dane trailer, a 2006 Yamaha ATV, a 1990 Dorsey trailer, and a 1992 Cadillac DeVille. Garner

---

[*]Honorable Willis B. Hunt, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

filed a petition for Chapter 13 bankruptcy on March 19, 2010. The Chapter 13 confirmation plan values the collateral at $33,300.00. As of the date of bankruptcy, Garner's outstanding debt to FUSB was $26,849.10. It is undisputed that FUSB's loan is oversecured. The confirmation plan provides for full payment of FUSB's claim with a "prime-plus" present value interest rate of 4.25% per year, determined under the standard in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951 (2004).

FUSB filed an objection to the confirmation plan on the grounds that it was entitled to the contract interest rate of 10.5% following petition and confirmation. The bankruptcy court granted the objection in part and overruled in part, requiring post-petition interest at the contract rate of 10.5% but post-confirmation interest at the prime-plus rate of 4.25%. The district court affirmed the determination of the bankruptcy court and we affirm.

## II.

This court reviews legal determinations of the bankruptcy court and district court *de novo*. *In re Paschen*, 296 F.3d 1203, 1205 (11th Cir. 2002) (citing *Gen. Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1494 (11th Cir. 1997)).

## III.

Section 506(b) of the Bankruptcy Code is an exception to the general rule that a creditor cannot claim interest accruing on debts during bankruptcy:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). An oversecured creditor can recover post-petition interest under Section 506(b) as part of its allowed claim. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989). There is no dispute that interest accumulated between filing the bankruptcy petition and confirmation of the bankruptcy plan is calculated at the contract rate under Section 506(b). *In re Delta Res., Inc.*, 54 F.3d 722, 730 (11th Cir. 1995) (citing *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1407 (5th Cir. 1986)). The issue on appeal is whether Section 506(b) applies following confirmation. The decisions of the bankruptcy and district courts, which held that Section 506(b) is inapplicable following confirmation, are consistent with Supreme Court and circuit court decisions interpreting the scope of Section 506(b).

In *Rake v. Wade*, the Supreme Court noted that an oversecured creditor's claim for interest accrues under Section 506(b) "as part of the allowed claim from

4

the petition date until the confirmation or effective date of the plan." 508 U.S. 464, 471, 113 S. Ct. 2187, 2191 (1993), *superseded on other grounds by statute* 11 U.S.C. § 1322(e). FUSB argues that *Rake* is not applicable to this case because the parties in *Rake* agreed that Section 506(b) only applied to the post-petition, pre-confirmation period. Yet this court stated in dicta in *Telfair v. First Union Mortg. Corp.* that the party agreement in *Rake* did not undermine the rule that Section 506(b) only applies during the pre-confirmation period. 216 F.3d 1333, 1338 (11th Cir. 2000). FUSB also argues that *Telfair* is not persuasive because it focused on an oversecured creditor's right to recover attorney fees under Section 506(b) and not the rate of interest allowed following confirmation. This distinction is baseless because Section 506(b) allows oversecured creditors to include post-petition interest, costs, *and* fees as part of the secured claim until confirmation. *Id.* at 1339. Every circuit that has discussed the temporal aspect of Section 506(b) relies on the Supreme Court's statement in *Rake* that Section 506(b) applies only from the date of filing through confirmation. *Countrywide Home Loans, Inc. v. Hoopai* (*In re Hoopai*), 581 F.3d 1090, 1099–1100 (9th Cir. 2009); *Telfair*, 216 F.3d at 1338–39; *Key Bank Nat'l Ass. v. Milham* (*In re Milham*), 141 F.3d 420, 425 (2d Cir. 1998); *Fin. Sec. Assurance Inc. v. T-H New*

5

*Orleans Ltd. P'ship* (*In re T-H New Orleans Ltd. P'ship*), 116 F.3d 790, 797 (5th Cir. 1997).

Interpreting Section 506(b) to only apply post-petition, pre-confirmation is also consistent with decisions of our sister circuits that address the temporal scope of Section 506(b) in relation to Section 1325(a)(5)(B)(ii). Section 1325(a)(5)(B)(ii) allows confirmation of a debtor's plan if the value of property under the plan is not less than the allowed amount of the claim on the effective date of the plan. 11 U.S.C. § 1325(a)(5)(B)(ii) (2004). The Ninth and Second Circuits read Sections 506(b) and 1325 together to mean that interest accrues under 506(b) only until confirmation of the plan even though that section lacks an explicit temporal limitation. *In re Hoopai*, 581 F.3d at 1099–1100; *In re Milham*, 141 F.3d at 423, 425. FUSB argues that because there is no "cutoff" provision in Section 506(b), an oversecured creditor can accrue interest post-confirmation until the equity cushion is exhausted. A similar argument was made by the appellant in *In re Milham* but rejected. *In re Milham*, 141 F.3d at 423. The Second Circuit held that pendency interest does not run post-confirmation because "[o]n the date of confirmation, the allowed claim of an oversecured creditor is augmented by the inclusion of section 506(b) pendency interest." *Id.* Once the debtor invokes the

6

"cram-down" power of Section 1325(a)(5)(B), the creditor's rights, including the rate of interest, are subject to modification in bankruptcy.

If Sections 506(b) and 1325(a)(5)(B) both apply post-confirmation, the creditor would receive a windfall. *Id.* at 424–25. The amount of the secured claim is set at confirmation and includes accrued post-petition contract interest under Section 506(b). *See id.* at 423 ("Section 506(b) thus defines the allowed claim of an oversecured creditor; treatment of that claim after confirmation is governed by Section 1325."). If a creditor accrues interest at the contract rate post-confirmation, interest upon interest would be compounded and exceed the present value of the claim under Section 1325(a)(5)(B). Although dicta in *Telfair*, our holding in this case is that an oversecured creditor is only entitled to the contract rate of interest from the date of filing until confirmation of the bankruptcy plan in a Chapter 13 case where the debtor invokes the "cram down" power of 11 U.S.C. § 1325(a)(5)(B).

## IV.

For the foregoing reasons, the district court's judgment is affirmed.

**AFFIRMED.**